## DAWKINS v. KEYSTONE GRANITE CO.

NEGLIGENCE—MASTER AND SERVANT—NONSUIT.—Where the evidence in an action by servant against master for injuries caused by the explosion of a dynamite cartridge shows that the cartridge was concealed, that the danger arising from its concealment was known to the servant, that it was created by the negligent act of a fellow-servant, that it was incidental to the work and arose during its progress, and that it was a consequence naturally and reasonably to be anticipated from the nature of the employment, nonsuit should be granted.

Before KLUGH, J., Spartanburg, November, 1905. Reversed.

Action by Paul Dawkins against Keystone Granite Co. From judgment for plaintiff, defendant appeals on following exceptions:

"1. Because the presiding Judge erred in not holding on defendant's motion for a nonsuit, that no testimony had been offered tending to show that the defendant had been guilty of any negligent act which was the proximate cause of plaintiff's injury, and in not, therefore, granting a nonsuit, and dismissing the complaint.

"2. Because the presiding Judge erred in not holding on the defendant's motion for a nonsuit, that if the testimony

of the plaintiff showed negligence at all, such negligence was that of a fellow-servant with the plaintiff, and in not, therefore, granting the motion for nonsuit, and dismissing the complaint.

"3. Because the presiding Judge erred in charging the jury as law applicable to this case, as follows: 'But if there are dangers that are not incident, or dangers which are not apparent, cannot be seen by a person of ordinary observation, and which are commonly spoken of as latent or hidden dangers, then it is the duty of the employer, or master, to warn the servant of them. It is the duty of the master to ascertain if any of those dangers are existing, especially if it can be done by the use of ordinary care on the part of the master. If such dangers exist, and are known to the master, it is his duty to warn the servant of the existence of such hidden dangers. A servant is not required, and does not assume, risks of hidden dangers, or dangers that are not open to observation by persons of ordinary powers of observation and ordinary prudence. Now, if the defendant knew of the presence of the charge of dynamite in the stone, or not, it was his duty to know it, whether he actually knew it or not, and if the presence of that dynamite charge was not known to the plaintiff, and could not have been known, would not have been open to observation by a person of ordinary prudence, then, if the defendant failed to bring this knowledge of the hidden danger to the notice of the plaintiff, that was an act of negligence for which the defendant would be responsible if any injury ensued from that negligence,' etc. The error being:

"(a) That such charge was a charge upon the facts, in that it stated to the jury that the defendant was bound to ascertain, even if he did not know, whether there was a charge of dynamite in the stone or not, and its failure to do so and inform the plaintiff, was negligence for which a recovery could be had—such instructions having invaded the province of the jury, and being in conflict with that provision

of the Constitution of South Carolina which inhibits a charge upon the facts.

"(b) Such instruction was erroneous, in that it placed upon the defendant, and relieved the plaintiff of, the duty of ascertaining whether the particular work the plaintiff was then engaged in, was or was not beset with hidden dangers, and this without respect to whether the defendant knew or did not know of such dangers, and whether the plaintiff was or was not of such capacity and intelligence as to call for such duty, under the rules of law, from the defendant.

"4. Because the presiding Judge erred in refusing to charge the jury, as requested in defendant's third request to charge, as follows: '3. Nor does the rule which requires the employer to furnish the employee a safe place to work require said employer to furnish such employee safe material to work in or with.' The error being: That there is no rule of law which requires a master who has employed servants to do such hazardous work as blasting or breaking up rock, as they are blasted from a quarry, to keep all the rock so quarried free from unexploded blasts, and consequently, safe for its employees. Such work being in its nature hazardous, and being in charge of the employee himself, and not the master, does not come within the rule of law which requires the master to furnish his employee a safe place in which to work, and the refusal of this request was, therefore, error of law.

"5. Because the presiding Judge erred in charging the jury in connection with the defendant's fifth request to charge, as follows: 'But the rule (the fellow-servant rule) does not extend far enough to protect the master from liability from negligence on the part of the master, or on the part of some person whom the master has appointed to stand in the master's place in directing work, or doing something in reference to the work which is not of the common enterprise; and furthermore, it is the duty of the master to be on the lookout, and ascertain if everything is safe. That is not a part of the employment as a fellow-servant, even though he may appoint one of the parties who are engaged

in the common enterprise, he may elevate him, the master is required to ascertain whether there is reasonable safety, and the person thus elevated into the position of master is not a fellow-servant, and the master will not be relieved from liability if his servant is injured from the negligence of any person who is standing in the shoes of the master.' The error being:

"(a) That such instruction was erroneous, in that it imposed the entire duty of looking out and warning against danger upon the master, when, we submit, such duty is as much upon the plaintiff himself and his fellow-servant, and even more so, in hazardous work and work in which the hazards are constantly changing like that here—than upon the master.

"(b) The instruction, that it was not a part of the employment of a fellow-servant to look out and ascertain if everything was safe, and in effect that any servant upon whom this burden rested was elevated above his co-servants, and stood to them as master—was erroneous in law, and tended to prejudice the rights of the defendant.

"6. Because the presiding Judge erred in modifying the defendant's seventh request to charge, by instructing the jury that the rule there announced must be taken in connection with the rule of law which requires the master to exercise ordinary care in furnishing a safe place, and safe appliances, to the servant, and which rule entitles the servant to rely upon the master to do these things—such modification, we submit, emasculating and destroying the principle contained in the request itself."

*Messrs. Simpson & Bomar,* for appellant, cite: *No negligence: Owings* v. *Moneynick Mills,* 55 S. C.; 72 S. C., 237. *If any, it was of fellow-servant: McDaniel* v. *Ry.,* 70 S. C.; 51 S. C., 96; 72 S. C., 237. *Charge that failure of defendant to know of dynamite in rock and notify plaintiff was negligence, is on facts:* 61 S. C., 471; 58 S. C., 230; 47 S. C., 523; 61 S. C., 563. *Not duty of employer to make inspection*

*for missed "shots:"* 40 C. C. A., 545; 2 Lobat on M. & S., secs. 585, 586, 587, 589, 1813; 87 Hun., 519; 72 S. C., 243.

*Mr. Stanyarne Wilson,* contra, cites: *There was no charge on facts:* 72 S. C., 421; 64 S. C., 215. *Doctrine of fellow-servant does not apply to one appointed by master to direct work: Brabham* v. *Ry.,* 71 S. C.; *Martin* v. *Ry.,* 72 S. C.; 72 S. C., 420; *Jackson* v. *Ry.,* 73 S. C.

June 26, 1906. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action for damages alleged to have been sustained by the plaintiff through the negligence and wantonness of the defendant. The allegations of the complaint material to the issues involved are as follows: That the plaintiff was on the 6th day of September, 1901, employed by the defendant as a workman, and while engaged in removing a rock for said defendant a charge of dynamite in said rock exploded by which he was seriously injured. The specifications of negligence and wantonness are as follows:

"(1) In having said charge of dynamite in said rock or stone without informing plaintiff of its presence, although the fact of its presence was known to defendant and unknown to the plaintiff.

"(2) In causing and directing plaintiff to cut and break said stone with said dynamite concealed therein, without informing plaintiff of its presence, thereby causing the said explosion and said injury to plaintiff.

"(3) In not giving plaintiff a safe place in which to work, but, on the contrary, in putting him to work at said rock or stone containing said deadly charge of dynamite, which exploded while plaintiff was discharging his duty to the defendant, the presence of which charge of dynamite was known to the defendant, or should have been known, and could have been known by it had it made proper inspection of said stone before placing plaintiff at work thereat."

The defendant denied the material allegations of the complaint and set up the defenses of negligence, contributory negligence and assumption of risk on the part of the plaintiff.

At the close of the plaintiff's testimony the defendant made a motion for nonsuit, which was refused.

The defendant did not offer any testimony. The jury rendered a verdict in favor of the plaintiff for $1,000.

The defendant appealed upon exceptions which will be set out in the report of the case.

There was testimony to the effect that at the time the work was rendered dangerous, and, also, that at the time the injury was sustained, the plaintiff was a servant of the defendant. He was foreman of a squad of twenty-three laborers, whose duty it was to break up and remove blocks of granite after they had been blasted from the solid rock. The implements used were hand tools, such as steel wedges and sprawls. These employees worked under the direction and control of Dan Smith, who had charge of the blasting, and was the "general boss" of the common enterprise. In a stone ten feet long, four feet high and six feet wide, upon which the plaintiff was at work, there was a "jumper" hole in the center thereof, which contained a dynamite cartridge that had failed to explode on the previous day, when the rock was blasted by those acting under orders of Dan Smith. The plaintiff knew that this hole had been bored into the rock for the purpose of receiving a cartridge; that the cartridges at times failed to explode; and that there was nothing which indicated to him in this instance that the cartridge had exploded, thus showing that he had notice of the danger although he was not aware of the actual fact that the cartridge had failed to explode. In blasting, a number of holes were drilled in the solid rock and dynamite cartridges placed in them, with fuses of varying lengths, so that each cartridge would make its separate detonation; and these reports when counted would determine whether any of the cartridges had failed to explode. There was no testimony that the count was kept in this instance. Dan Smith had left the

grounds before the blasting took place on the afternoon preceding the injury. There was no evidence of inspection by Smith next morning before giving orders for plaintiff's squad to work on the rock.

It will thus be seen that the vital question in this case is whether there was testimony tending to show that the danger was hidden or unusual. Our interpretation of the testimony is that while it shows the cartridge was concealed, nevertheless it likewise shows that the danger arising from its concealment was known to the plaintiff; that it was created by the negligent act of a fellow-servant; that it was incidental to the work and arose during its progress; and that it was a consequence naturally and reasonably to be anticipated from the nature of the employment.

It was error, therefore, to refuse the motion for a nonsuit. This conclusion is sustained by the cases of *Martin* v. *Royster Guano Co.*, 72 S. C., 237, and *Biggers* v. *Catawba Power Co.*, 72 S. C., 264.

The views which have been expressed practically dispose of all exceptions.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed and the case remanded for a new trial.